1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAYMOND L. OUBICHON,

11            Petitioner,                    No. CIV S-07-838 GEB CHS P

12       vs.

13   CALIFORNIA DEPT. OF CORRECTIONS
     AND REHABILITATION,
14
             Respondent.               FINDINGS AND RECOMMENDATIONS
15
     _____/
16

17                              I.  INTRODUCTION

18            Petitioner is a state prisoner proceeding pro se with an application for writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2003 conviction for

20   attempted criminal threat, case 629078 in the California Superior Court, County of Placer.

21                                II.  ISSUES

22            Petitioner sets forth ten separate grounds for relief which the undersigned has

23   reorganized into the following claims:

24       A.    The trial court erred when it modified petitioner's conviction to attempted criminal
               threat without resubmitting the matter to a jury;
25
         B.    The trial court gave a jury instruction which undermined the reasonable doubt
26             burden of proof;

                                         1

C.       The readback of testimony to jurors outside the presence of and without notice to petitioner or his attorney violated the Sixth Amendment;

D.       There was insufficient evidence to support petitioner's conviction and insufficient evidence of a prior conviction used as an enhancement;

E.       The sentence imposed constitutes cruel and unusual punishment;

F.       Both trial and appellate counsel rendered ineffective assistance of counsel;

G.       The trial court erred when it denied petitioner's motion to strike a "strike."

After careful review of the record, the undersigned recommends the petition be denied.

## III.  PROCEDURAL AND FACTUAL BACKGROUND

Petitioner's conviction was based on a threat to kill his wife, Felice Pena. (C045022 opinion at 2.[1]) Pena testified at trial that she was not afraid when petitioner threatened her and she admitted to telling a number of untruths at the time she reported the threat. *Id.* The couple resumed living together the same day and remained together until petitioner's arrest several months later. *Id.* Police officer Delgadillo testified at trial as to Pena's prior statements about the incident. *Id.* Petitioner was convicted by a jury of making a criminal threat and found to have three prior serious felony convictions and two prior prison terms. Petitioner received a total sentence of 27 years to life. Petitioner timely appealed to the California Court of Appeal, Third District, case C036914.[2] The state appellate court reversed the judgment after finding the trial court had prejudicially erred in failing to instruct on the lesser included offense of attempted criminal threat. (C036914 opinion at 28.) The appellate court also found there was insufficient evidence of one prior felony conviction. (C036914 opinion at 28.) In accordance with the California Court of Appeal decision, the trial court entered a modified judgment for attempted criminal threat. Once again, petitioner received a total sentence of 27 years to life, reflecting a 25 year term for attempted criminal threat and a consecutive two year term for two prior prison

[1] Opinion is lodged in this record as Document 31 (11/20/07).

[2] Opinion is lodged in this record as Document 21 (11/20/07).

2

1  terms.  Petitioner timely appealed to the California Court of Appeal, Third District, case C045022.

2  This time, the judgment was affirmed.  (C045022 opinion at 10.)

3              IV.  APPLICABLE LAW OF FEDERAL HABEAS CORPUS

4              An application for a writ of habeas corpus by a person in custody under a judgment

5  of a state court can be granted only for violations of the Constitution or laws of the United States.

6  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

7  *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  A

8  federal writ is not available for alleged error in the interpretation or application of state law.

9  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th

10  Cir. 2000); *Middleton*, 768 F.2d at 1085.  Nor can habeas corpus be utilized to try state issues *de*

11  *novo.  Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

12              This petition for writ of habeas corpus was filed after the effective date of, and thus

13  is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v.*

14  *Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).

15  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the

16  merits in state court proceedings unless the state court's adjudication of the claim:

17              (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
18              determined by the Supreme Court of the United States; or

19              (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
20              State court proceeding.

21  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

22  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

23              The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are

24  different.  Under the "contrary to" clause of §2254(d)(1), a federal court may grant the writ only if

25  the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question

26  of law or if the state court decides the case differently than the Supreme Court has on a set of

1    materially indistinguishable facts.  *Williams*, 529 U.S. at 405.  As the Third Circuit has explained,

2    "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court

3    precedent is more plausible than the state court's; rather, the petitioner must demonstrate that

4    Supreme Court precedent *requires* the contrary outcome."  *Matteo v. Superintendent*, *SCI Albion*,

5    171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original).  The state court is not required

6    to cite the specific controlling test or Supreme Court authority, so long as neither the reasoning

7    nor the result of the state court decision contradict either.  *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

8    The court may grant relief under the "unreasonable application" clause if the state

9    court correctly identifies the governing legal principle but unreasonably applies it to the facts of

10   the particular case.  *Williams*, 529 U.S. at 410.  The focus of this inquiry is whether the state

11   court's application of clearly established federal law is objectively unreasonable.  *Id*.  "[A] federal

12   habeas court may not issue the writ simply because that court concludes in its independent

13   judgment that the relevant state-court decision applied clearly established federal law erroneously

14   or incorrectly.  Rather, that application must also be unreasonable."  *Id*.

15   The court will look to the last reasoned state court decision in determining whether

16   the law applied to a particular claim by the state courts was contrary to the law set forth in the

17   cases of the United States Supreme Court or whether an unreasonable application of such law has

18   occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919

19   (2003).  A court may deny a petition for writ of habeas corpus on the ground that relief is

20   precluded by 28 U.S.C. §2254(d) without addressing the merits of the claim.  *Lockyer v. Andrade*,

21   538 U.S. 63, 71 (2003).

22                                V.  ANALYSIS OF PETITIONER'S CLAIMS

23   A.      MODIFIED JUDGMENT

24   On petitioner's first appeal, the state appellate court found an instructional error

25   and reversed petitioner's criminal threat conviction.  The case was remanded with instructions that

26   if the prosecution declined to retry petitioner, the trial court should enter judgment for attempted

                                                    4

criminal threat and hold a new sentencing hearing.  (C036914 opinion at 28-29.)  Following the

prosecution's decision not to retry petitioner, the judgment was modified to reflect a conviction

for attempted criminal threat.  Petitioner claims due process required a new jury to determine

whether the factual elements of attempted criminal threat were present.  (Third Amended Petition

at 7.)  This claim is without merit, because all of the elements required for a finding of attempted

criminal threat had already been submitted to a jury and proved beyond a reasonable doubt.

       In order to prove a violation of criminal threat under California law, five elements

must be proven:

> (1) that the defendant "willfully threaten[ed] to commit a crime
> which will result in death or great bodily injury to another person,"
> (2) that the defendant made the threat "with the specific intent that
> the statement ... is to be taken as a threat, even if there is no intent
> of actually carrying it out," (3) that the threat-which may be "made
> verbally, in writing, or by means of an electronic communication
> device"-was "on its face and under the circumstances in which it
> [was] made, ... so unequivocal, unconditional, immediate, and
> specific as to convey to the person threatened, a gravity of purpose
> and an immediate prospect of execution of the threat," (4) that the
> threat actually caused the person threatened "to be in sustained fear
> for his or her own safety or for his or her immediate family's
> safety," and (5) that the threatened person's fear was "reasonabl[e]"
> under the circumstances.

Cal. Penal Code §422; *see also* People v. Toledo 26 Cal.4th 221, 227 -228 (Cal. 2001).  A person

commits *attempted* criminal threat under California law if, acting with the requisite intent, that

person

> makes a sufficient threat that is received and understood by the
> threatened person, but, for whatever reason, the threat does not
> *actually* cause the threatened person to be in sustained fear for his
> or her safety even though, under the circumstances, that person
> reasonably could have been placed in such fear...

*People v. Toledo*, 26 Cal.4th 221, 231 (2001).  The California Court of Appeal determined that the

trial court erred in omitting the attempted criminal threat instruction because the evidence

supported a  finding that Pena was not in sustained fear from petitioner's threat.  (C036914

opinion at 10.)

1    Attempted criminal threat is a lesser included offense to the offense of criminal

2 threat.  *See Toledo*, 26 Cal.4th at 226.  When the element of the victim's sustained fear is removed

3 from the offense of criminal threat, the remaining elements support a conviction of attempted

4 criminal threat.  The jury found true every factual element required to support a conviction of

5 attempted criminal threat when it found petitioner guilty of criminal threat.  Accordingly,

6 petitioner was not deprived of due process or his Sixth Amendment right to jury trial.  *See Morris*

7 *v. Mathews*, 475 U.S. 237, 247 (1986) (allowing a jeopardy barred conviction to be reduced on

8 appeal to a conviction for a lesser included offense which was not jeopardy barred where it was

9 clear that the jury necessarily found all elements of the lesser included offense); *see also Franks v.*

10 *Alford*, 820 F.2d 345, 347 (10th Cir. 1987) (*citing Morris v. Mathews* for the rule that "a reduction

11 on appeal to the lesser included offense does not run afoul of the Sixth Amendment, because the

12 jury has found all the elements of the lesser offense.")  Petitioner is not entitled to relief on this

13 claim.

14 B.    INSTRUCTIONAL ERROR

15    Petitioner claims that his constitutional right to have guilt determined beyond a

16 reasonable doubt was violated when the trial court instructed the jury that other acts of domestic

17 violence may be considered if proved by a preponderance of evidence.  (Third Amended Petition

18 at 3.)

19    The Due Process Clause of the Fourteenth Amendment protects the accused

20 against conviction except upon proof beyond a reasonable doubt of every fact necessary to

21 constitute the crime with which he or she is charged.  *In re Winship*, 397 U.S. 358, 364 (1970).  If

22 the jury is not properly instructed that a defendant is presumed innocent until proven guilty

23 beyond a reasonable doubt, the defendant has been deprived of due process.  *Middleton v. McNeil*,

24 541 U.S. 433, 437 (2004).  Any jury instruction that "reduce[s] the level of proof necessary for the

25 Government to carry its burden... is plainly inconsistent with the constitutionally rooted

26 presumption of innocence."  *Cool v. Unites States*, 409 U.S. 100, 104 (1972).  When confronted

6

with an ambiguous instruction, the inquiry is whether there is a "reasonable likelihood" that the jury has applied it in an unconstitutional manner. *See Estelle*, 502 U.S. at 72 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Any challenged instruction must be considered in light of the full set of jury instructions and the trial record as a whole. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).

In this case, the trial court instructed as follows:

If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type offense. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime for which is accused.

Before you can use evidence of any uncharged act of domestic violence, you must be satisfied by a preponderance of the evidence that the defendant, did, in fact, commit that crime. If you are not satisfied by a preponderance of the evidence, you may not use evidence of an uncharged act of domestic violence for any purpose and must disregard it entirely. When I referred to the uncharged acts, I am referring to not charged in this case. It is referring to the prior incidents that were mentioned.

Under some circumstances, which I will discuss in a moment, you must be satisfied beyond a reasonable doubt that the defendant committed an uncharged offense before you may rely on it. If you conclude by a preponderance of the evidence that the defendant committed an uncharged act of domestic violence, then you may consider that evidence and weigh it with any other evidence received during the trial in determining whether the defendant committed the offense with which he is charged. The weight and sufficiency of the evidence are for you to determine.

However, you may not conclude that simply because the defendant committed any particular uncharged offense, he committed the charged offense. You must be satisfied beyond a reasonable doubt of each element of the charged offense in order to find the defendant guilty of that offense.

If you cannot determine an element that the prosecutor is required to prove, for example, whether the victim was reasonably in sustained fear for her safety or whether the defendant had the required specific intent at the time of the charged crime, without relying on the evidence from an uncharged offense, then you must be satisfied beyond a reasonable doubt that the defendant committed that uncharged offense.

7

1 (RT at 281-83.[3])  The jury was elsewhere instructed concerning the general presumption of

2 innocence and the reasonable doubt burden of proof (RT at 276-77), and to view the instructions

3 as a whole and each in light of the others.  (RT at 270.)

4        These instructions, as a whole, did not reduce the level of proof necessary for the

5 prosecution to carry its burden.  *Compare Gibson v. Ortiz*, 387 F.3d 812, 821-22 (9th Cir. 2004)

6 (interplay of two instructions allowed the jury to find that the defendant committed uncharged

7 offenses by a preponderance of the evidence and thus to infer that he had committed the *charged*

8 acts based upon only a preponderance of the evidence).  In contrast to the instructions given in

9 *Gibson*, the instructions in this case directed the jury that it must be satisfied beyond a reasonable

10 doubt of each element of the charged offense in order to find the defendant guilty of the offense,

11 and further, that it must be satisfied beyond a reasonable doubt that the defendant committed an

12 uncharged offense if it relied on that uncharged offense to find a required element of the crime.  It

13 is presumed that the jury followed these instructions (s*ee Richardson v. Marsh*, 481 U.S. 200, 206

14 (1987)), and there appears no reasonable likelihood that they were applied in an unconstitutional

15 manner.  Petitioner was not deprived of due process when the jury was instructed that prior acts of

16 domestic violence may be considered if proved by a preponderance of the evidence, unless the

17 evidence of an uncharged offense was essential to a determination beyond reasonable doubt of an

18 element of the charged offense.

19 C.      READBACK OF TESTIMONY

20        Petitioner claims his Sixth Amendment rights were violated when the trial court

21 conducted a readback of testimony for jurors outside the presence of and without notification to

22 him or his counsel.  (Third Amended Petition at 3.)  Respondent asserts this claim is barred by the

23 rule announced in *Teague v. Lane*, 489 U.S. 288, 307 (1989).  "With few exceptions, the *Teague*

24 non-retroactivity doctrine prohibits courts from announcing new rules of law in federal habeas

25

26       [3] Reporter's Transcript on Appeal is lodged in this record as Documents 2-3 (11/20/07).

proceedings." *Hoffman v. Arave*, 236 F.3d 523, 537 (9th Cir. 2001), *cert. denied*, 534 U.S. 944 (2001).  Where the issue has been properly raised, a federal court considering a petition for habeas corpus must conduct a threshold *Teague* analysis before considering the merits of a claim.  *Horn v. Banks*, 536 U.S. 266, 272 (2002).

A three-step test for the application of *Teague* was set forth in *Caspari v. Bohlen*, 510 U.S. 383 (1994):

> First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must "[s]urve[y] the legal landscape as it then existed," and "determine whether a state court considering [the petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution."  Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.

*Caspari*, 510 U.S. at 390 (internal citations omitted).

A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted, and a petition for writ of certiorari has been denied or, if not filed, when the 90 day time limit for filing has elapsed.  *Id.*; *see also* 28 U.S.C. §2102(c).  In this case, the California Supreme Court denied petitioner's second petition for appeal on January 26, 2005.[4]  Petitioner's conviction became final 90 days later, in April of 2005.  By that time, the Supreme Court had long recognized that "the right to personal presence at all critical stages of the trial... [is a] fundamental right[] of each criminal defendant."  *Rushen v. Spain*, 464 U.S. 114, 117 (1983).  This right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments.  *United States v. Gagnon*, 470 U.S. 522, 526 (1985).  However, the privilege of presence is guaranteed only at critical stages, and not "when presence would be

---

[4] S130071 Denial Order is lodged in this record as Document 33 (11/20/07).

1  useless, or the benefit but a shadow." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (*quoting*

2  *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1934)).  *See also Gagnon*, 470 U.S. at 527

3  (defendants' absence did not violate the Due Process Clause where their presence was not needed

4  to "ensure fundamental fairness" and they could not have added to or gained from being present).

5  In 2001, the Ninth Circuit noted that the Supreme Court has never addressed the issue whether

6  readback of testimony is a critical stage of the trial which triggers the defendant's fundamental

7  right to be present.  *La Crosse v. Kernan*, 244 F.3d 702, 708 (9th Cir. 2001).

8         In the Ninth Circuit, a *Teague* analysis may consider circuit court decisions as well

9  as United States Supreme Court decisions.  *Leavitt v. Arave*, 383 F.3d 809, 820 (9th cir. 2004)

10  ("[S]tate courts [are not] bound to follow Ninth Circuit law.  However, we have held that circuit

11  court holdings suffice to create a clearly established rule of law under *Teague*" (internal

12  quotations omitted)).  Under Ninth Circuit precedent at the time petitioner's conviction and

13  sentence became final, a defendant generally had (and still has) a constitutionally protected right

14  to be present during any readback of testimony.  *See Turner v. Marshall*, 63 F.3d 807, 814 (9th

15  Cir.1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir.1995);

16  *Hegler v. Borg*, 50 F.3d 1472, 1477 (9th Cir. 1995); *United States v. Kupau*, 781 F.2d 740, 743

17  (9th Cir. 1986).  It is clear that a requirement for petitioner's presence during the readback of

18  testimony would not constitute a new rule of law for *Teague* purposes.

19       Nevertheless, respondent's argument that AEDPA precludes relief is persuasive, because

20  the California Court of Appeal's decision was not contrary to or an unreasonable application of

21  clearly established federal law *as determined by the Supreme Court*.[5]  The California Court of

22  Appeal denied relief on this issue, reasoning that the California Supreme Court has held that (1)

23

24       [5] As the Supreme Court has stated, "with one caveat, whatever would qualify as an old

25  rule under our *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under [AEDPA].  The one caveat, as the statutory language makes clear, is that [AEDPA] restricts the source of clearly established law to

26  this Court's jurisprudence."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

1  "a readback of testimony is *not* a critical state of the proceedings" (emphasis added), and (2) "the

2  lack of consultation with trial counsel or the lack of trial counsel's presence did not interfere with

3  defendant's Sixth Amendment right to effective assistance of counsel." (C036914 Opinion at 24-

4  25.) There appears to be no Supreme Court authority addressing either issue. The state appellate

5  court's determination of the issue is entitled to deference under AEDPA, so that this claim should

6  be rejected.

7  D.    INSUFFICIENT EVIDENCE

8          1.    Insufficient Evidence for Conviction

9          Petitioner claims there was insufficient evidence to support his conviction of

10 attempted criminal threat, entered after the California Court of Appeal reversed the judgment of

11 conviction for criminal threat. (Third Amended Petition at 6.) Respondent persuasively asserts

12 the claim is procedurally barred.

13         Before seeking federal habeas corpus relief, a state prisoner must fairly present all

14 claims to the highest state court to provide that court with an opportunity to rule on the merits of

15 the federal claims. *Picard v. Connor*, 404 U.S. 270, 278 (1971). If a petitioner procedurally

16 defaults his federal claims in state court by operation of a state rule that is independent of federal

17 law and adequate to support the judgment, federal habeas review of the claims is barred unless the

18 prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged

19 violation of federal law, or that failure to consider the claims will result in a fundamental

20 miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). A state ground is

21 independent and adequate if the last state court to which the petitioner presented the claim

22 "actually relied" on a state rule that was sufficient to justify the decision. *Valerio v. Crawford*,

23 306 F.3d 742, 773 (9th Cir. 2002), *cert denied*, 538 U.S. 994 (2003).

24         Petitioner raised this claim in his second superior court habeas corpus petition.

25 The superior court denied the claim, stating "[a]n extraordinary writ may not be used to challenge

26 the sufficiency of the evidence; that is a matter properly cognizable on appeal." (WHC-636 denial

1  order at 2.[6])  This is an invocation of California's *Lindley* bar.  Under *Lindley*, sufficiency of the

2  evidence is not a proper issue for habeas corpus review.  *Ex parte Lindley*, 29 Cal.2d 709, 723

3  (1947).  California's *Lindley* rule is an independent and adequate state procedural bar.  *Carter v.*

4  *Giurbino*, 385 F.3d 1194, 1197-98 (9th Cir. 2004).  The California Court of Appeal, Third

5  District, and the California Supreme Court both rejected petitioner's insufficient evidence claim

6  with silent denials.[7]  It is presumed that the state appellate court and state supreme court denied

7  the claim for the same reason as the superior court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)

8  ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

9  orders upholding that judgment or rejecting the same claim rest upon the same ground").  Thus,

10 the California Supreme court actually relied on *Lindley* when it denied petitioner's claims.  *See*

11 *Carter*, 385 F.3d at 1197.  Petitioner has not demonstrated cause for the default or actual

12 prejudice.  Petitioner's claim of insufficient evidence for his attempted criminal threat conviction

13 is procedurally barred in this court.

14              2.      Insufficient Evidence of the Prior Conviction

15              Petitioner also claims there was insufficient evidence to support the trial court's

16 finding that he suffered a prior serious felony conviction for assault with a deadly weapon with

17 personal use of the weapon.  (Third Amended Petition at 8.)  Petitioner claims the prosecution did

18 not meet its asserted burden to prove the prior conviction beyond a reasonable doubt.  (Third

19 Amended Petition at 8.)  Petitioner raised this claim in his first appeal.  The California Court of

20 Appeal determined that the prior serious felony conviction was properly proven and rejected the

21 claim.  (C036914 opinion at 15.)  Petitioner cites no Supreme Court holding, and there appears to

22 be none, that the Constitution requires a state to prove a prior conviction enhancement beyond a

23 ────────────────────

24        [6] Superior Court Order Denying Petition for Writ of Habeas Corpus No. WHC-636 is
     lodged in this record as Document 35 (11/20/07).

25        [7] California Court of Appeal Third Appellate District Denial Order is lodged in this
     record as Document 37 (11/20/07); California Supreme Court Denial Order is lodged in this
26   record as Document 39 (11/20/07).

                                                  12

1   reasonable doubt.  Indeed, in *Dretke v. Haley*, the Supreme Court stated that it has never imposed

2   such a requirement: "We have not extended *[In re] Winship*'s protections [of proof beyond a

3   reasonable doubt] to proof of prior convictions used to support recidivist enhancements."  541

4   U.S. 386, 395 (2004).  In the absence of any Supreme Court authority requiring proof of prior

5   convictions beyond a reasonable doubt, the state appellate court's decision rejecting the claim was

6   not contrary to, or an unreasonable application of Supreme Court authority.  The California Court

7   of Appeal's determination of the claim is entitled to deference under AEDPA and no relief can be

8   granted.

9   E.       CRUEL AND UNUSUAL PUNISHMENT

10          Petitioner claims that a sentence of 25 years to life for attempted criminal threat is

11   cruel and unusual punishment under the Eighth Amendment.  (Third Amended Petition at 6.)

12          In  *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court held

13   that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant

14   clearly established law amenable to the 'contrary to' or 'unreasonable application of' [the

15   AEDPA] framework is the gross disproportionality principle, the precise contours of which are

16   unclear and applicable only in the 'exceedingly rare' and 'extreme' case."  *Id*. at 73 (*citing

17   Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 290 (1983);

18   and *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).  The Supreme Court concluded that two

19   consecutive 25 years to life sentences with the possibility of parole, imposed under California's

20   Three Strikes Law following two petty theft convictions with priors, did not amount to cruel and

21   unusual punishment.  *Andrade*, 538 U.S. at 77; *see also Ewing v. California*, 538 U.S. 11 (2003)

22   (holding that a sentence of 25 years to life imposed for felony grand theft under California's

23   Three Strikes law did not violate the Eighth Amendment).

24          Following the decision in *Andrade*, the Ninth Circuit held that a third strike

25

26

1   sentence of 25 years to life for shoplifting, a "wobbler" offense under state law,[8] constituted cruel

2   and unusual punishment. *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004). In so holding, the

3   court relied upon the limited and non-violent nature of the petitioner's prior criminal history and

4   the fact that the petitioner's only prior period of incarceration had been a single one-year jail

5   sentence. *Id*. at 768-69. Thereafter, in *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004), the court

6   distinguished the holding in *Ramirez* from the situation then confronted, finding that the

7   petitioner in *Rios* had a "lengthy criminal history," had "been incarcerated several times," and

8   that the prior strikes used to enhance his sentence had "involved the threat of violence." *Id*. at

9   1086.

10          In this case, the sentence imposed does not fall within the type of "exceedingly

11  rare" circumstances that would violate the Eighth Amendment. It is true that the sentence

12  petitioner received for his verbal offense is potentially longer than a sentence for a violent crime.

13  In weighing the gravity of his offense for purposes of a proportionality analysis, however, the

14  court "must place on the scales not only his current felony," but also his criminal history. *Ewing*,

15  538 U.S. at 29. This is not a case in which the petitioner's criminal history is comprised solely of

16  non-violent offenses stemming from a single, dated incident and a single guilty plea resulting

17  only in a one-year jail (as opposed to prison) sentence. *See Ramirez*, 365 F.3d at 768-69. Rather,

18  as the California Court of Appeal noted, the offenses in petitioner's prior criminal record include

19  a 1979 second degree murder conviction, a 1986 conviction for assault with a deadly weapon, a

20  1989 robbery conviction, a 1990 assault conviction, and a 1995 conviction for criminal threat.

21  (C045022 opinion at 3-5.) In addition, petitioner spent much of the 1990's in prison and incurred

22  at least four parole violations. (C045022 opinion at 4.) Petitioner's sentence of 25 years to life is

23  not grossly disproportionate considering his criminal history, and therefore is not cruel or unusual

24  punishment.

25  _____

26          [8] A "wobbler" offense is one that can be punished as either a misdemeanor or a felony
    under applicable law. *See Ferreira v. Ashcroft*, 382 F.3d 1045, 1051 (9th Cir. 2004).

F.     INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees the effective assistance of counsel.  A showing of ineffective assistance of counsel has two components.  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689).  In addition, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

1.     Trial Counsel

Petitioner first claims that trial counsel was ineffective for not arguing that the evidence was insufficient to support his conviction.  (Third Amended Petition at 7.)  Petitioner states that counsel did not "show the missing elements for the crime."  (Third Amended Petition at 7.)  Petitioner does not elaborate further.  This claim is vague and conclusory and could be rejected on that basis alone.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995)

1  ("'[c]onclusory allegations which are not supported by a statement of specific facts do not

2  warrant habeas relief'") (*quoting James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).  The claim, in

3  any event, is without merit.

4          Review of the state court trial record reflects that, contrary to petitioner's claim,

5  trial counsel did argue the evidence was insufficient to support a conviction of criminal threat.  In

6  closing argument, defense counsel stated to the jury: "[y]ou never heard any direct evidence in

7  the entire time you have been here that my client threatened Ms. Pena."  (RT at 243.)  Counsel

8  argued that Ms. Pena was not reasonably or subjectively afraid of petitioner.  (RT at 249-52.)

9  Counsel repeatedly emphasized that Ms. Pena was a liar.  (RT at 245-47.)  Counsel argued that

10  Ms. Pena lied to Officer Delgadillo about petitioner threatening her and addressed her motivation

11  for doing so.  (RT at 248; 251-52.)  Counsel also attacked the adequacy of the police

12  investigation.  (RT at 253.)  Counsel impeached Officer Delgadillo's credibility and questioned

13  his memory of the incident.  (RT at 244.)  Counsel pointed out that Officer Delgadillo's report

14  did not indicate that the victim appeared scared.  (RT at 243-44.)  Counsel stated "[a]ll we have

15  here is the divergent stories" and argued the offense had not been proved beyond a reasonable

16  doubt.  (RT at 253.)

17          The Supreme Court has emphasized the deference accorded to trial counsel in

18  making closing argument:

19          ... counsel has wide latitude in deciding how best to represent a
            client, and deference to counsel's tactical decisions in his closing
20          presentation is particularly important because of the broad range of
            legitimate defense strategy at that stage.  Closing arguments should
21          "sharpen and clarify the issues for resolution by the trier of fact,
            but which issues to sharpen and how best to clarify them are
22          questions with many reasonable answers... Judicial review of a
            defense attorney's summation is therefore highly deferential-- and
23          doubly deferential when it is conducted through the lens of a
            federal habeas.
24
    *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (internal citations omitted).  In the present case,
25
    trial counsel vigorously argued the evidence was insufficient to support a conviction and the
26

16

1  argument fell within the broad range of professionally competent assistance.

2          Petitioner claims separately in "Ground 9" of his petition that trial counsel was

3  also ineffective in failing to move to reduce his conviction on the "wobbler" offense of criminal

4  threat to a misdemeanor. (Third Amended Petition at 8.) Petitioner acknowledges that counsel

5  filed such a motion but complains that the motion was never decided. (Third Amended Petition

6  at 8.) Petitioner raised this claim in his second appeal. The California Court of Appeal rejected

7  the claim, holding that to press the motion would have been futile:

8              In order to effectively reduce a third strike offense to a
              misdemeanor, a trial court must determine that a defendant falls
9             outside the scope of the three strikes law. [This] trial court's
              decision that [petition] fell within the spirit of the three strikes law
10            and should serve a life sentence must surely be considered a
              rejection of the argument that he should do no more than one year
11            in the county jail.

12 (C045022 opinion at 9) (internal citation omitted). It is clear that further advocacy of a motion to

13 reduce petitioner's conviction to a misdemeanor would have been futile, given the trial court's

14 determination that petitioner should be subject to the three strikes law and possibly confined for

15 the remainder of his life. Counsel's failure to make a futile motion does not constitute

16 ineffective assistance of counsel. *James*, 24 F.3d at 27. Moreover, counsel *did* make the futile

17 motion in this case, although the trial court failed to rule on it. For these reasons, petitioner is

18 not entitled to relief on his claim that trial counsel was ineffective.

19          2.       Appellate Counsel

20          Petitioner claims that appellate counsel was ineffective on the first appeal for

21 failing to raise insufficiency of the evidence. (Third Amended Petition at 7.) Petitioner states

22 that appellate counsel failed to "point out to the court that the evidence was not legally sufficient

23 to support a conviction for the charge of Attempted Criminal Threat" and failed to point out that

24 "the court had no jurisdiction to modify the judgment to a verdict of guilty on that charge."

25 (Third Amended Petition at 7.) Petitioner does not elaborate further or offer any explanation as

26 to why his appellate counsel should have raised these claims instead of, or in addition to, those

17

1  that were raised on appeal.  Again, petitioner's claim could arguably be rejected for these reasons

2  alone.  *See Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26.  Relief can also be denied on the merits.

3       The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith*

4  *v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

5  An indigent defendant "does not have a constitutional right to compel appointed counsel to press

6  nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

7  decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Counsel "must

8  be allowed to decide what issues are to be pressed."  *Id*.  There is, of course, no obligation to

9  raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a

10  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

11  to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to demonstrate prejudice, a

12  petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on

13  appeal.  *Id*. at 1434 n.9.

14       Petitioner's appellate counsel raised several issues in the first appeal, including

15  that (1) petitioner's due process rights were violated when evidence of two prior incidents of

16  domestic violence was admitted; (2) the limiting instructions given to the jury on this issue were

17  erroneous; (3) the evidence of two prior convictions was insufficient; (4) petitioner was denied

18  his right to counsel and to be present during readback of testimony; (5) the trial court erred by

19  failing to instruct sua sponte on the lesser included offense of attempted criminal threat; and (6)

20  the sentence imposed was cruel and unusual.  (C036914 opinion at 2.)  The state appellate court

21  agreed, in part, and reversed the judgment.  (C036914 opinion at 28.)  In the second appeal,

22  petitioner's appellate counsel raised additional claims that (1) the trial court abused its discretion

23  when it denied a motion to strike enhancements for prior serious felony convictions and (2) trial

24  counsel was ineffective.  (629078 opinion at 2.)

25       As set forth *supra* in the procedural background of this case, petitioner was

26  granted relief on some of the claims raised by appellate counsel.  In contrast, the claims petitioner

18

1   states should have been raised would have been weak or without merit.  With respect to the

2   insufficiency of evidence claim, it appears from petitioner's California Supreme Court habeas

3   corpus petition that the claim would amount to an attack on the credibility of Ms. Pena (i.e., a

4   claim that she lied when she said petitioner threatened her).  (S138700 Petition, Ground 1.[9])

5   However, under California's standard for appellate review of insufficiency of the evidence, the

6   record is reviewed in the light most favorable to the judgment (*People v. Johnson*, 26 Cal.3d 557,

7   576 (1980)), and the credibility of witnesses is generally beyond the scope of review.  *People v.*

8   *Barnes*, 42 Cal.3d 284, 303-04 (1986).  Thus, the claim would have been weak.  In addition,

9   petitioner's claim regarding the modified judgment has no merit for the reasons set forth in

10  subsection A, *supra*.

11          Appellate counsel's decision to press only the claims that she believed, in her

12  professional judgment, had more merit than the claims suggested by petitioner was "within the

13  range of competence demanded of attorneys in criminal cases."  *McMann v. Richardson*, 397

14  U.S. 759, 771 (1970).  Accordingly, petitioner is not entitled to relief on his claim that appellate

15  counsel was ineffective.

16  G.      DENIAL OF PETITIONER'S MOTION TO STRIKE

17          Petitioner claims the trial court abused its discretion when it denied his motion to

18  strike one "strike."  (Third Amended Petition at 7.)  Petitioner is referring to the trial court's

19  discretion to strike enhancing prior serious felony convictions pursuant to the holding of the

20  California Supreme Court in *People v. Superior Court (Romero)*, 13 Cal.4th 497, 529-30 (1996).

21  Specifically, petitioner alleges "the trial court erred in its duty to weigh the 'individualized

22  considerations' relevant to petitioner's case," instead focusing "nearly exclusively on the issue of

23  whether the current offense was proven or not."  (Third Amended Petition at 7.)

24  /////

25

26          [9] Petition for Writ of Habeas Corpus, California Supreme Court case S138700 is lodged in this record as Document 38 (11/20/07).

19

1    This claim relates to a California sentencing law and presents no federal question.

2    Relief in this court is not available for an alleged error of state law.  *Estelle*, 502 U.S. at 67.

3    Absent fundamental unfairness, federal habeas corpus relief is not available for a state court's

4    misapplication of its own sentencing laws.  *Middleton v. Cupp*, 768 F.2d at 1085; s*ee also*

5    *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1989) (holding petitioner not entitled to habeas

6    relief on claim that state court improperly used prior federal offense to enhance punishment);

7    *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (holding claim that prior conviction

8    was not "serious felony" under California sentencing law not cognizable in federal habeas corpus

9    proceeding).  Accordingly, no relief can be granted on this claim.

10                                    VI.  CONCLUSION

11    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

12    application for a writ of habeas corpus be denied.

13    These findings and recommendations are submitted to the United States District

14    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15    days after being served with these findings and recommendations, any party may file written

16    objections with the court and serve a copy on all parties.  Such a document should be captioned

17    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18    shall be served and filed within ten days after service of the objections.  The parties are advised

19    that failure to file objections within the specified time may waive the right to appeal the District

20    Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

21    DATED:        December 1, 2008

22                                    CHARLENE H. SORRENTINO
                                      UNITED STATES MAGISTRATE JUDGE
       2

23

24

25

26